**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL SKOOG,
            *Plaintiff-Appellee,*

v.

COUNTY OF CLACKAMAS; MARK
FRESH,
                        *Defendants,*

and

HERBERT ROYSTER,
            *Defendant-Appellant.*

No. 04-35087

D.C. No.
CV-00-01733-
MWM

DANIEL SKOOG,
            *Plaintiff-Appellant,*

v.

COUNTY OF CLACKAMAS; MARK
FRESH; HERBERT ROYSTER,
            *Defendants-Appellees.*

No. 04-35286

D.C. No.
CV-00-01733-
MWM

DANIEL SKOOG,
            *Plaintiff-Appellant,*

v.

COUNTY OF CLACKAMAS;
            *Defendant-Appellee,*

and

MARK FRESH; HERBERT ROYSTER,
            *Defendants.*

No. 04-35568

D.C. No.
CV-00-01733-MO

OPINION

18617

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
March 9, 2006—Portland, Oregon

Filed November 20, 2006

Before: Melvin Brunetti, Thomas G. Nelson, and
Richard A. Paez, Circuit Judges.

Opinion by Judge T.G. Nelson

**COUNSEL**

Montomery W. Cobb, Cobb & Bosse, LLP, Portland, Oregon, for plaintiff-appellant-appellee Daniel Skoog.

Rolf C. Moan, Assistant Attorney General, Salem, Oregon, for defendant-appellant-appellee Herbert Royster.

Edward S. McGlone, Assistant County Counsel, Clackamas County, Oregon City, Oregon, for defendant-appellee County of Clackamas.

## OPINION

T.G. NELSON, Circuit Judge:

### I. Introduction

This set of appeals arises from a single lawsuit that is still ongoing. The district court granted summary judgment on the basis of qualified immunity to one of the defendants, Officer Herbert Royster, on all but one claim: the plaintiff's claim that Royster seized his still camera in retaliation for the exercise of his First Amendment rights. In 04-35087, Royster interlocutorily appeals the court's denial of summary judgment on that claim, and we reverse. Although the plaintiff stated a valid retaliation claim, the right assertedly violated — the right to be free of intentional, retaliatory action for which probable cause exists — was not clearly established. Accordingly, Royster is entitled to summary judgment based on the second prong of our qualified immunity analysis.

In part of 04-35286, the plaintiff, Daniel Skoog, appeals the district court's grant of summary judgment to Royster based on qualified immunity on Skoog's illegal search and seizure claim. On the facts pled in the complaint, it is clear that probable cause existed for the search and seizure. Accordingly, we affirm the district court's grant of summary judgment based on the first prong of the qualified immunity analysis.

In the remainder of 04-35286, Skoog seeks to appeal the district court's limitation of his retaliation claim (the subject

of Royster's interlocutory appeal) to one item and its denial of his motion for leave to amend. In 04-35568, he seeks to appeal various other decisions of the district court. We lack jurisdiction over these issues because the district court did not certify them pursuant to Federal Rule of Civil Procedure 54(b) and no final judgment exists regarding them.

## II.   Background[1]

On February 19, 2001, Officer Herbert Royster first encountered the plaintiff, Daniel Skoog. At the time, Royster was engaged in a sting operation at a Get & Go convenience store. Using a juvenile "decoy," he caught the cashier selling tobacco products to a minor. While engaged in conversation with the cashier, Royster noticed Skoog filming him with a digital video camera.

Skoog had been in a dispute with the county since his arrest on a DUI charge in December 2000. He had been photographing and videotaping police activities for some time. It so happened that Skoog's business, which sells protective armor to law enforcement agencies, is in the same building as the Get & Go. Skoog had gone to the store to buy some tobacco when he noticed Royster talking loudly to the cashier. He then retrieved his video camera from his office and began filming.

Skoog filmed the scene from outside the store for approximately two minutes. During that time, Royster was talking with the cashier, and the juvenile "decoy" and at least three other customers were inside the store. Skoog was not close enough to Royster to record his conversation with the cashier. However, after Skoog had been filming for two minutes, Royster approached Skoog, showed him his police identification, and asked why he was filming. Skoog told him he just enjoyed filming things.

---

[1]The facts are derived from the complaint, supporting documentation, and the district court's opinion, and are interpreted in the light most favorable to the plaintiff.

Royster told Skoog that he might have committed a crime, saying that "if you are recording my words, sir, without notifying me, that is a felony offense in the State of Oregon . . . . If you are recording my voice, you must advise me before you do so . . . ." Skoog admitted that he had recorded Royster's voice. Royster asked for the videotape. Skoog refused to give it to him, but told him he would give him a copy. Royster said that he would turn the matter over to the Clackamas County District Attorney's office.

Skoog returned to his office and began making a copy of the videotape. Royster requested a uniformed deputy to accompany him to Skoog's office. When that deputy, Deputy Kraus, arrived at the scene, he gave Royster some background regarding Skoog.

Specifically, Kraus told Royster that Skoog was engaged in a lawsuit against the county and another deputy, Deputy Fresh, who had arrested Skoog on the DUI charge in December 2000. Skoog had filed a suit alleging that Deputy Fresh had arrested him without probable cause and with excessive force, and that county officials had denied him medical treatment for the eleven hours he was in the county jail. Skoog subsequently added other claims to the suit, including those on appeal. In addition to that suit, the criminal proceeding for the DUI was continuing in state court at the time of the Get & Go incident.

After Royster learned of Skoog's suit, he and Deputy Kraus went to Skoog's office. There, Skoog was using his computer to copy the videotape. As the tape played on the computer, the deputies saw and heard the part of the tape in which Royster was talking to Skoog. Skoog gave them "what purported to be a copy of the tape." He also took photos of the officers with his "still" (i.e., not video) digital camera. Of particular importance to this appeal is the fact that Royster believed that Skoog's video camera, attached to his computer, may have been in the background of the photos.

Royster heard from fellow officers that Skoog had been taking photographs of other officers. Indeed, as part of his defense in his state DUI case and in his federal § 1983 claims, Skoog had been taking pictures of officers watching his house and following people who left his house. He stored his photos and observations on his computer. Royster told fellow officers that Skoog had been "venemous" during their encounter. He also described Skoog as presenting a danger to law enforcement and described "the protective armor, large caliber shells, and bullet-riddled car door he had seen while in [the] plaintiff's office."

Over two weeks after the incident with Skoog at the Get & Go, Royster viewed the tape Skoog had given him. It turned out to be a partial copy containing only the first fourteen seconds of the tape. Royster sought advice from his superiors and from the District Attorney's office. The District Attorney's office told him that he had sufficient evidence to approach a judge. Royster obtained a search warrant from a magistrate judge.

In the affidavit accompanying his application for the search warrant, Royster stated that the reason for the warrant was to obtain evidence of a violation of Oregon Revised Statute Section 165.543, a statute that makes it a misdemeanor to intercept oral communications when "none of the parties to the communication has given prior consent to the interception."[2] Royster sought and received a warrant authorizing the seizure of Skoog's computer system and associated hardware, video cameras, and, most important to this appeal, Skoog's still digital camera. The affidavit asserted that the still camera should be seized because Royster saw Skoog use the camera to take photos of Royster and Kraus while they were in his office. Those photos, in turn, "[we]re of additional evidentiary value as they are independent evidence of our contact that day in [plaintiff's] office and may depict [plaintiff's] computer and

---

[2]Or. Rev. Stat. § 165.543(1).

digital [video] camera at his desk area." Finally, the affidavit described the protective armor, shells, and car door Royster had seen, though it did not seek their seizure.

Royster and eleven other armed officers, some with guns drawn, executed the warrant. Before the raid, the officers received copies of the search warrant as well as an "Operation Plan" that listed the armor, shells, and car door Royster had seen in Skoog's office and noted that Skoog had filed a lawsuit against the county. While officers seized Skoog's equipment and copied his hard drive, Skoog protested that they were seizing attorney-client privileged communications. The officers continued to seize the items. At some point, Royster said that "people shouldn't sue cops" or "it wasn't right to sue an officer." The officers seized all the equipment listed on the warrant, including the still camera.

The state refused to return the seized items for over a year and has allegedly never returned several items, including two tapes containing attorney-client privileged information regarding Skoog's state DUI defense and this case. The state court judge found that officers had improperly reviewed privileged communications found on the seized tapes and therefore dismissed the DUI charges against Skoog that were pending in state court. The judge also found that the search warrant had been issued without probable cause.

Meanwhile, in federal court, Skoog amended his complaint to add claims against Royster and the county from the search of his office and the seizure of his equipment. Relevant to this appeal, Skoog's third amended complaint asserted that Royster violated Skoog's Fourth Amendment right to be free of unlawful searches and seizures and that Royster obtained and executed the warrant to retaliate against Skoog, in violation of the First Amendment, for filing his lawsuit. The district court interpreted the retaliation claim as asserting that Royster both obtained the warrant in retaliation for the lawsuit and executed the warrant in a retaliatory manner. With respect

to the execution of the warrant, the court concluded that Skoog had asserted both that the search was conducted in an unnecessarily aggressive manner, "in that numerous armed officers raided his office in search of evidence of a misdemeanor," and that the search was overbroad, "in that the warrant sought plaintiff's still camera which had nothing to do with the alleged interception offense."

Royster moved for summary judgment on all of Skoog's claims, asserting qualified immunity. The district court granted summary judgment to Royster as to the illegal search and seizure claim and as to all but a small part of the retaliation claim.

As to the illegal search and seizure claim, the court held that a state court's ruling finding no probable cause did not collaterally estop Royster from asserting the existence of probable cause for the warrant in this case. Skoog challenges this conclusion on appeal. The court then held that a genuine issue of material fact existed regarding whether there was probable cause supporting the warrant as written. The warrant alleged a violation of Oregon Revised Statute Section 165.543, which bars the interception of oral communications about which an expectation of privacy exists. Because no such expectation existed when Skoog taped Royster at the Get & Go, the court held that probable cause to believe Skoog had violated the statute did not exist.

The court then reasoned that a question of material fact existed regarding whether a reasonable officer might have thought that probable cause existed. Oregon Revised Statute Section 165.540(1)(c) prohibits the recording of conversations without first informing the participants. That statutory provision contains no requirement that the person being taped have an expectation of privacy. The court concluded that Royster "essentially made a citation error when he failed to cite that statute and instead cited O[regon] R[evised] S[tatute] § 165.543." Concluding that qualified immunity should pro-

tect officers who make such errors, the court granted sum-
mary judgment to Royster on the illegal search and seizure
claim.

The court also granted summary judgment to Royster as to
all but a small portion of Skoog's retaliation claim. The court
denied summary judgment to Royster on plaintiff's claim that
the search was overbroad because it included the still camera.
Although Skoog's complaint alleged overbreadth with respect
to additional articles that were seized in the search, the court
held that Skoog had abandoned his claims regarding those
additional articles by failing to address or even mention them
in his briefing. Thus, the court only addressed Skoog's claim
regarding the still camera.

Finally, the district court denied Skoog's motion for leave
to amend his complaint a fourth time to add various claims.

Three appeals are before the panel. In 04-35087, Royster
appeals the district court's denial of summary judgment on
the part of the retaliation claim involving the still camera. In
04-35286, Skoog cross-appeals the court's limitation of the
overbreadth portion of the retaliation claim solely to the still
camera. He also cross-appeals the court's grant of summary
judgment to Royster on the search and seizure claim and the
court's denial of his motion for leave to amend to add a
§ 1985 claim against Royster.

In 04-35568, Skoog directly appeals the district court's
denial of leave to amend as to two different defendants: Depu-
ties Kraus and Thompson. Skoog asserts that the district court
erred when it denied his motion for leave to file a fourth
amended complaint to add claims against those defendants.

### III.   Jurisdiction

When denials of summary judgment based on qualified
immunity turn on legal questions, they are immediately appeal-

able.[3] Thus, we have jurisdiction over Royster's interlocutory appeal of the district court's denial of summary judgment on Skoog's retaliation claim involving the still camera (No. 04-35087). We have jurisdiction under 28 U.S.C. § 1291 over part of Skoog's cross-appeal (No. 04-35286): his appeal of the district court's grant of summary judgment on the illegal search and seizure claim. The district court determined that the issue was inextricably intertwined with the retaliation claim, certified it pursuant to Federal Rule of Civil Procedure 54(b), and entered a final judgment on the claim. We thus have jurisdiction over the appeal of that final judgment.

We lack jurisdiction over the other issues in Skoog's cross-appeal (No. 04-35286): his assertion that the district court erred when it limited the retaliation claim to the camera and when it denied him to leave to amend his claims against Royster. We also lack jurisdiction over the issues he attempts to raise in his direct appeal (No. 04-35568): the district court's denial of his request for leave to file a fourth amended complaint and the district court's grant of summary judgment to Clackamas County. The district court neither certified these issues[4] nor entered a final judgment regarding them. Accordingly, we lack jurisdiction.[5] Thus, we dismiss the part of Skoog's cross-appeal involving the district court's limitation of his retaliation claim to the still camera (No. 04-35286) and his direct appeal (No. 04-35568).

## IV.   Standards of Review

We review de novo the district court's partial denial of Royster's motion for summary judgment based on qualified immunity with respect to the retaliation claim involving the

---

[3]*Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

[4]Although the district court entered a second Rule 54(b) order, the order was identical to the previous order and did not certify any new issues.

[5]*See, e.g., Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 993 (9th Cir. 2004).

still camera[6] and its grant of summary judgment on Skoog's illegal search and seizure claim.[7]

## V.   Disussion

**[1]** Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test.[8] First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?"[9] If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted.[10] That is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[11] If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the officer could have believed, "reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right."[12] If the answer is yes, the officer is entitled to qualified immunity. If the answer is no, he is not.

In *Saucier v. Katz*,[13] the Supreme Court emphasized the importance of answering the first question — whether a complaint states a constitutional claim — first. If courts fail to do

---

[6]*Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004).

[7]*Bingham v. City of Manhattan Beach*, 341 F.3d 939, 945 (9th Cir. 2003).

[8]*See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

[9]*Id.* at 201.

[10]*Id.* at 201-02.

[11]*Id.* at 202.

[12]*Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

[13]533 U.S. 194.

so, they will not "set forth principles which will become the basis for a holding that a right is clearly established" and will thus short-circuit "the process for the law's elaboration from case to case."[14] The Court also emphasized the importance, in the second step, of defining the right with sufficient particularity.[15] Determinations of whether a right is clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition."[16]

With the Supreme Court's instructions in *Saucier* in mind, we now consider Royster's claim of qualified immunity with respect to his Fourth Amendment and then First Amendment claims.

*Fourth Amendment*

Royster asserted qualified immunity in response to the claim that he violated Skoog's Fourth Amendment rights by obtaining a warrant and seizing the still camera without probable cause. Turning to the first prong of the qualified immunity analysis, we must examine the facts pled in the light most favorable to Skoog to determine if he has asserted a violation of the Fourth Amendment. We conclude that he has not.

With respect to the warrant, Skoog argues that we need not conduct our own inquiry regarding probable cause because an Oregon court has already found that the probable cause did not exist and collateral estoppel applies. The district court held that the state court decision was not binding because it occurred in the DUI case the state filed against Skoog, and Royster lacked privity with the state. We agree.

**[2]** This court "give[s] to a state-court judgment the same preclusive effect as would be given that judgment under the

---

[14]*Id.* at 201.

[15]*Id.* at 201-02.

[16]*Id.* at 201.

law of the State in which the judgment was rendered."[17] Thus, to determine whether the state court's holding applies to Royster in this litigation, we turn to Oregon law. When, as in this case, the party against whom collateral estoppel is asserted was not a party to the first litigation, Oregon law requires that he or she have been in privity with a party to that litigation.[18] To be in privity with a party, a person must have been able to "direct the course of litigation" such that he or she "had a fair and complete opportunity to litigate the issue of liability" in the first litigation.[19] Thus, Oregon law defines privity quite narrowly, requiring actual control.[20]

[3] Skoog does not allege that Royster had actual control over the prior litigation, and it is clear that Royster did not. The district court thus correctly held that the state court's conclusion regarding probable cause does not apply. We must therefore conduct our own analysis.

[4] Probable cause supported the warrant if the affidavit, read "in a non-technical, common sense, and realistic manner . . . provided a substantial basis for concluding there was a fair probability that . . . evidence of a crime [would] be found in [Skoog's office]."[21] In his affidavit, Royster asserted that Skoog had recorded him without first informing him. He also asserted that he had personally observed evidence of the recording — the video camera, the computer to which the

---

[17]*Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 688 (9th Cir. 2004) (internal quotation marks omitted).

[18]*Rynearson v. Firestone Tire & Rubber Co.*, 607 P.2d 738, 739 (Or. Ct. App. 1979).

[19]*Id.* at 739-40.

[20]*Id.* at 740 and n.1 (rejecting the argument that "when the issue itself has been fully presented, advocated and adjudicated in a prior action, a person's interest has been adequately represented regardless of actual right of control" and contrasting Oregon's strict rule with the more liberal rules of other states).

[21]*United States v. Hill*, 55 F.3d 479, 480 (9th Cir. 1995) (internal quotation marks and citations omitted).

video was transferred, and the video itself — in Skoog's office. Recording someone without first informing him violates Oregon Revised Statute Section 165.540(1)(c). The warrant therefore provided a substantial basis for the conclusion that Skoog had violated Oregon law and that evidence of the violation was in his office.

**[5]** Skoog makes much of the fact that Royster listed a different, and incorrect, statutory provision in his affidavit: Oregon Revised Statute Section 165.543. As we held in *United States v. Meek*,[22] however, a "statutory variance in the affidavit is not fatal to the warrant's validity" as long as "the affidavit established probable cause [ ] and the items sought under the warrant corresponded to that probable cause determination."[23] The affidavit in this case satisfies that test. Accordingly, the warrant was valid. Skoog has therefore not pled facts that assert a violation of his Fourth Amendment rights with respect to the warrant generally. We turn now to the question of whether probable cause existed to seize the still camera specifically.[24]

**[6]** Probable cause to seize the still camera existed if the affidavit provided a "substantial basis" for believing that the item constituted or contained evidence of the alleged crime.[25] Although it is a close question, we conclude that the affidavit did so. In the affidavit, Royster stated that Skoog took pictures of Kraus and Royster. He then stated: "I know those original photos are of additional evidentiary value as they are independent evidence of our contact that day in that office and *may depict Mr. Skoog's computer and digital [video] camera*

---

[22]366 F.3d 705 (9th Cir. 2004).

[23]*Id.* at 713.

[24]*See United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir. 1990) (explaining that probable cause must exist not only to support the warrant but as to each item seized as well).

[25]*Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (internal quotation marks omitted).

*at his desk area in the background . . . .*[26] Thus, Royster asserted that he was certain Skoog took photos and that he believed the photos might include depictions of the video camera used to do the recording and the computer used to store it. He therefore established that the camera was likely to contain evidence, albeit indirect evidence, of the alleged crime. This sufficed to establish probable cause.

[7] Because probable cause existed to support both the warrant and the seizure of the still camera, Skoog cannot plead facts to support a violation of the Fourth Amendment. Our qualified immunity inquiry therefore ends at the first prong with respect to Skoog's search and seizure claims and we affirm the district court's grant of summary judgment on those claims.

*First Amendment*

Royster also asserted qualified immunity in his defense of the claim that he retaliated against Skoog for filing this lawsuit against the County and another officer.[27] Turning to the first prong of the qualified immunity analysis, we must examine the facts pled in the light most favorable to Skoog to determine if he has asserted a violation of the First Amendment.

[8] To demonstrate retaliation in violation of the First Amendment, Skoog must ultimately prove first that Royster took action that "would chill or silence a person of ordinary firmness from future First Amendment activities."[28] The parties do not dispute that searching someone's office and seiz-

---

[26]Emphasis added.

[27]Originally, this suit only included Clackamas County and the other deputy. It was thus pending when Royster encountered Skoog. Skoog then added Royster to the suit.

[28]*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

ing materials can satisfy this first requirement. The second requirement is the focus in this case. That requirement involves causation. Skoog must ultimately prove that Royster's desire to cause the chilling effect was a but-for cause of the defendant's action.[29] Whether a plaintiff must plead the absence of probable cause in order to satisfy this second requirement and state a claim for retaliation is an open question in this circuit[30] and the subject of a split in the other circuits.[31] After close review of the relevant precedent, we conclude that a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation.

When considering the qualified immunity defense in the retaliation context, courts must strike an appropriate balance between protecting First Amendment rights, on the one hand, and protecting government officials from the disruption caused by unfounded claims, on the other.[32] Two recent

---

[29]*Id.*; *see Hartman v. Moore*, 547 U.S. ___, 126 S.Ct. 1695, 1703-04 (2006).

[30]Rulings on retaliation claims in this Circuit have all involved situations in which genuine issues of material fact existed regarding whether an objective legal ground supported the allegedly retaliatory police action or in which no objective legal ground existed. *See, e.g., Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) (finding no legitimate ground for detention); *Mendocino Envtl. Ctr.*, 192 F.3d at 1292-94 (finding genuine issues of material fact existed regarding probable cause for Plaintiffs' arrests).

[31]*Compare Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002); *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002), *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), and *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (holding that an absence of probable cause was required in claims of retaliatory arrest); *with Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002) and *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (holding that a claim for retaliatory arrest could be made even if probable cause existed for the arrest).

[32]*Hartman*, 126 S. Ct. at 1702 and *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998) (noting that retaliation claims, because they involve assertions of officials' states of mind, are "easy to allege and hard to disprove") (internal quotation marks omitted).

Supreme Court cases provide guidance regarding this impor-
tant balance.

In *Crawford-El v. Britton*,[33] the Supreme Court rejected a
rule adopted by the District of Columbia Circuit that required
retaliation plaintiffs to offer "clear and convincing evidence
on the [defendant's] state-of-mind [ ] at summary judgment
and trial."[34] The rule unfairly "place[d] a thumb on the defen-
dant's side of the scales,"[35] the Court explained, by increasing
the requirements of the cause of action itself.[36] The require-
ments of a cause of action should not be confused with the
doctrine designed to protect government officials: the doctrine
of qualified immunity.[37] It is to that doctrine that courts
should turn to protect the "strong public interest in protecting
public officials from the costs associated with the defense of
damages actions," the Court explained.[38]

In his dissent in *Crawford-El*, Justice Scalia proposed an
objective test under which defendants would be entitled to
judgment on retaliation claims, regardless of their subjective
intent, if some "objectively valid" legal ground existed for
their action.[39] Under Justice Scalia's proposal, presumably no
retaliation claim could be maintained against an arresting offi-
cer, regardless of his subjective reasons for the arrest, if prob-
able cause existed for the arrest.

The majority of the court rejected Justice Scalia's "objec-

---

[33]523 U.S. 574.

[34]*Id.* at 583, 593-94.

[35]*Id.* at 593.

[36]*Id.* at 591.

[37]*Id.* at 589 (noting that the Supreme Court "has never indicated that
qualified immunity is relevant to the existence of the plaintiff's cause of
action").

[38]*Id.* at 590.

[39]*Id.* at 612 (Scalia, J., dissenting).

tive test" as "unprecedented."[40] The doctrine of qualified immunity already incorporates objective standards, the Court explained. In the second step, it requires questioning "the state of the law at the time of the challenged conduct — [a] question[ ] that normally can be resolved on summary judgment."[41] In the third step, it focuses "on the objective legal reasonableness of an official's acts" as well.[42] Thus, the doctrine incorporates objective standards and protects officials, but at less cost to plaintiffs and to the First Amendment than Justice Scalia's test.[43]

[9] In *Hartman v. Moore*,[44] the Supreme Court considered whether the absence of probable cause should be an element of a particular subcategory of retaliation claims: retaliatory prosecution claims. The Court ultimately decided that the absence of probable cause should be an element of that subcategory. Although this outcome might seem to conflict with *Crawford-El*, the Supreme Court's reasoning brings it into harmony with that earlier decision.

In *Hartman*, the Supreme Court was careful to explain that the practical problems of establishing causation in retaliatory prosecution actions motivated its decision, not any need to provide additional protection to government officials.[45] According to the Court, it makes sense to require the absence of probable cause in retaliatory prosecution claims because several attributes of such claims make doing so necessary and not very onerous.

The requirement of pleading and proving no probable cause

---

[40]*Id.* at 594.

[41]*Id.* at 590.

[42]*Id.*

[43]*Id.* at 592-94.

[44]126 S.Ct. 1695.

[45]*Id.* at 1702-04.

will produce little hardship on plaintiffs litigating retaliatory prosecution claims, the Court explained. Evidence proving or disproving the existence of probable cause is readily available at even the earliest stages in these cases.[46] In *Hartman*, for example, the prosecutor had presented evidence to the grand jury in order to persuade it to indict.[47] Thus, the evidence necessary to determine the existence of probable cause was readily available at the earliest stages of the litigation. The added burden of pleading and proving the absence of probable cause in retaliatory prosecution claims, then, should not be onerous.

[10] Pleading and proving the absence of probable cause is necessary in retaliatory prosecution cases, the Court reasoned, because of the complexity of causation in such cases.[48] Retaliatory prosecution claims are really "for successful retaliatory *inducement* to prosecute" because they can only be maintained against officials, such as investigators, who may persuade prosecutors to act.[49] To prove causation, then, a plaintiff must show not only that the defendant official harbored retaliatory animus and thus sought to induce prosecution, but also that the official succeeded — that is, that the "prosecutor [ ] would not have pressed charges otherwise."[50] A plaintiff's task is particularly difficult, the Court noted, due to the "longstanding presumption of regularity accorded to prosecutorial decisionmaking" which courts may not "lightly discard."[51] To justify suspending the presumption, a plaintiff must show "a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the

---

[46]*Id.* at 1704 (noting that, in such cases "there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge").

[47]*Id.* at 1700.

[48]*Id.* at 1705-06.

[49]*Id.* at 1704-05 (emphasis added).

[50]*Id.* at 1705.

[51]*Id.*

prosecutor's decision to go forward."[52] The requirement of no probable cause is necessary "to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity."[53] Thus, differences between retaliatory prosecution claims and other retaliation claims justified and necessitated the additional requirement in retaliatory prosecution claims.

[11] We conclude that the retaliation claim in this case does not involve multi-layered causation as did the claim in *Hartman*. To be sure, one aspect of the situation in this case is somewhat analogous to that in *Hartman* — a second party (the magistrate judge in this case; the prosecutor in *Hartman*) found probable cause based on the defendant's affidavit and the evidence that was used is readily available. However, an important fact distinguishes the situation in this case from that in *Hartman*: Royster retained control over the allegedly retaliatory action (the search and seizure) after the second party (the magistrate judge) found probable cause. Causation thus turns on his actions alone and no "bridge" between motive and action is necessary. Thus, the rationale for requiring the pleading of no probable cause in *Hartman* is absent here. This case presents an "ordinary" retaliation claim.

Our conclusion is in accord with our precedent. Although the Ninth Circuit has never decided this precise issue, we did remark, in *Duran v. City of Douglas*,[54] that the viability of the Fourth Amendment claim rendered the First Amendment claim "redundant."[55] We interpret this statement as a suggestion that, were the Fourth Amendment claim invalid, the First Amendment claim would not be redundant and would still be

---

[52]*Id.* at 1706.

[53]*Id.*

[54]904 F.2d 1372.

[55]*Id.* at 1378 & n.5.

valid. Our decision today comports with that earlier suggestion.

[12] We have concluded that Skoog need not have pled the absence of probable cause in order to state a claim for retaliation. Our earlier conclusion that probable cause existed for the still camera's seizure therefore does not preclude his statement of a claim. Moreover, he has stated all the elements necessary for a retaliation claim. Thus, the first prong of the qualified immunity analysis does not end our inquiry and we must proceed to the second.

The second prong requires us to determine whether the right, defined according to the actual facts of the case, was clearly established at the time of the search.[56] In this case, we define the right as the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause.

[13] At the time of the search, the right we have just defined was far from clearly established in this Circuit or in the nation.[57] We have decided only today that a right exists to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action. At some future point, this right will become clearly established in this Circuit. At the time Royster acted, however, the law was far from clear.[58] Accordingly, even assuming Royster's primary motivation for seizing Skoog's still camera was to retaliate for Skoog's exercise of his First Amendment rights, he violated no clearly

---

[56]*See Saucier*, 533 U.S. at 202.

[57]*Compare Dahl*, 312 F.3d at 1236, *Keenan*, 290 F.3d at 261-62; *Curley*, 268 F.3d at 73, and *Smithson*, 235 F.3d at 1063 (holding that an absence of probable cause was required in claims of retaliatory arrest); *with Greene*, 310 F.3d at 895 and *DeLoach*, 922 F.2d at 620 (holding that a claim for retaliatory arrest could be made even if probable cause existed for the arrest).

[58]*Id.*

established law because probable cause existed for the search. Royster is thus entitled to qualified immunity under the second prong of our qualified immunity analysis.[59] We therefore reverse the district court's denial of summary judgment on Skoog's claim for retaliation.

## VI.  Conclusion

We lack jurisdiction over Skoog's direct appeal (No. 04-35568) and over that part of his cross-appeal (No. 04-35286) involving the district court's limitation of the retaliation claim to the still camera. We have jurisdiction over the remainder of Skoog's cross-appeal (No. 04-35286) and over Royster's interlocutory appeal (No. 04-35087). We affirm the district court's grant of summary judgment based on qualified immunity on the search and seizure claim and reverse its denial of summary judgment based on qualified immunity with respect to the retaliation claim.

Appeal No. 04-35568 is DISMISSED; Appeal No. 04-35286 is DISMISSED IN PART AND AFFIRMED IN PART; Appeal No. 04-35087 is REVERSED, and this case is REMANDED FOR FURTHER PROCEEDINGS IN ACCORD WITH THIS OPINION. COSTS TO DEFENDANTS.

---

[59]*Saucier*, 533 U.S. at 201-02.