

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALLIE MAIDHOF, ZACHARY SOLOMON MILLER, JOSHUA CLOVER, LUZILDA CARILLO,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>MITCHELL CELAYA,<br><br>Defendant-Appellant. | No. 13-16800<br><br>D.C. No. 3:11-cv-04971-LDB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted November 18, 2015
San Francisco, California

Before: RAWLINSON, PARKER,[†] and HURWITZ, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[†] The Honorable Barrington D. Parker, Jr., Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

Plaintiffs-Appellees brought this putative class action pursuant to 42 U.S.C. § 1983 on behalf of approximately 60 individuals who were arrested on December 11, 2009 on misdemeanor trespass charges while occupying Wheeler Hall, a classroom building on the University of California, Berkeley campus, to protest budget cuts. Plaintiffs claim that Defendant-Appellant Mitchell Celaya, the former Chief of the University of California Police Department ("UCPD"), departed from a plan calling for field citations and directed that the arrestees be transported to the Santa Rita County Jail ("Santa Rita") for booking and citation in retaliation for their protected First Amendment activities. Celaya appeals from an order of the district court denying summary judgment on his qualified immunity defense. Because we conclude that Plaintiffs have failed to present specific, nonconclusory evidence from which a jury could reasonably infer that Celaya harbored a retaliatory intent, we reverse.

We review the district court's decision *de novo*. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007). To establish a claim for retaliation in violation of the First Amendment, Plaintiffs must show that Celaya's conduct "would chill a person of ordinary firmness from future First Amendment activity" and that his "desire to chill [their] speech was a but-for cause of [his] allegedly unlawful conduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013). "The doctrine of

2

qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity shields public officials from civil damages for performance of discretionary functions. It is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Where the evidence of probable cause is significant and that of retaliatory intent is "very weak," summary judgment is particularly appropriate in order to prevent the disruption of government functions by unfounded claims. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008).

We have jurisdiction over this appeal for the limited purpose of resolving whether Plaintiffs have presented "specific, nonconclusory" evidence of a retaliatory motive. *Jeffers v. Gomez*, 267 F.3d 895, 903, 907 (9th Cir. 2001); *see also Conner v. Heiman*, 672 F.3d 1126, 1130 n.1 (9th Cir. 2012). We conclude that they have not.

3

It is undisputed that Plaintiffs committed misdemeanor trespass. As a result, Celaya had discretion to issue citations "at the scene or at [an] arresting agency" such as Santa Rita. Cal. Penal Code § 853.6(g); *see also People v. Monroe*, 12 Cal. App. 4th 1174, 1193–94 (1993). He testified that he decided to transport the arrestees to Santa Rita in order to avoid disruptive or possibly violent confrontations with protesters who were gathering outside of Wheeler Hall. The existence of probable cause to arrest, while not dispositive, "undoubtedly 'ha[s] high probative force'" and undermines a finding that in transporting the arrestees to Santa Rita Celaya was motivated by a desire to chill their protected activities. *Dietrich*, 548 F.3d at 901 (quoting *Hartman v. Moore*, 547 U.S. 250, 265 (2006)).

As support for their contention that Celaya harbored a retaliatory motive, Plaintiffs rely upon three emails that he authored in the week leading up to the arrests. In a December 7 email, Celaya explained that the UCPD was willing to accommodate the protesters and expressed frustration over the fact that they had not negotiated in good faith and had changed their minds after agreeing to leave the auditorium. He also described concerns, some of which had been raised by third parties, over damage to university property, clean-up costs, and disruption to university activities resulting

4

from the protests. However, nothing in the email evinces hostility toward the protesters because they were demonstrating against budget cuts.

Similarly, in a December 9 email, Celaya suggested that the protesters' decision to have an all-night concert on December 11 "is not about issues and addressing a need but seeing how far they can push the envelope & party." Like the December 7 email, this email suggests that Celaya was cognizant of the protesters' purported aims but that they did not appear to him to be interested in engaging in protest activities. Nothing in the email suggests any hostility towards the protesters because of their protest of budget cuts.

Finally, in a December 11 email sent to the campus's Crisis Management Team after Plaintiffs were arrested, Celaya stated:

> As Captain Bennett mentioned we will have a team of officers monitor the proposed rally at 11:30 am. The good news is that the arrested protesters are still at Santa Rita getting booked so they won't be able to participate in the rally. . . . At the moment there is a rally going on with approx. 40 in attendance, we will see if they get more support.

Appellees argue that the second sentence reflects Celaya's satisfaction that protesters had been transported off campus for booking for demonstrating against the budget cuts. However, the full context of the email makes clear that he was concerned about crowd control. The first and last quoted sentences indicate that the UCPD was

5

monitoring the size of the rally. The second sentence highlights the "good news" that the arrestees were still at Santa Rita and therefore would not be able to attend the rally. Moreover, because Celaya was unaware of the December 11 rally when he decided to transport the arrestees to Santa Rita, that decision could not have been motivated by a desire to prevent their participation in the later rally.

The remaining evidence is similarly insufficient to create a genuine issue of fact as to retaliatory intent. Appellees claim that Celaya delayed processing of the arrestees for two hours so he would have an excuse to transport them to Santa Rita once a crowd gathered outside of the building. However, the record establishes that during this period the UCPD was identifying protesters who had prior arrests, including Plaintiff Maidhof, and transporting them to Santa Rita pursuant to the Operational Plan. There is no evidence to suggest how long this process took or that the UCPD was not acting diligently. Even assuming that the UCPD was slow to process Plaintiffs, there is no evidence that Celaya was responsible for the delay.

Plaintiffs also contend that the Operational Plan is itself evidence of retaliation because it singled out persons who had been arrested for engaging in prior protests at Wheeler Hall for off-campus processing, rather than all those with any prior arrests. But Celaya simply reviewed and approved this provision, which was drafted by other

6

members of the UCPD. Moreover, he testified that he understood this provision was justified because the UCPD lacked the resources to determine whether prior arrestees had violated any existing conditions of release at the time of their recent arrests and, if so, whether additional processing or detention might be necessary. Because there is no evidence that the Operational Plan reflected Celaya's state of mind or that he understood this provision to be motivated by retaliatory animus, the plan does not give rise to a genuine issue of fact as to whether he acted with a retaliatory intent.

Plaintiffs lastly argue that Celaya failed to comply with the UCPD's General Order establishing procedures for arrests. Paragraph 4 of the order provides:

> Misdemeanor citation shall be used in lieu of physical arrest and incarceration unless the subject is ineligible as provided in Section 853.6(j) of the California Penal Code. Every effort shall be made for field citation and release.

The district court concluded that this provision requires officers to use field citations for eligible misdemeanor arrestees and prohibits them from citing arrestees at a booking facility. We disagree. The General Order was promulgated "to implement Penal Code 853.6" and tracks the statute in most respects. Like section 853.6, the order mandates misdemeanor citation for eligible arrestees but gives officers discretion to cite the arrestee in the field or at a booking facility.

Plaintiffs urge that even if the General Order allows for booking at a facility, Celaya was required to make "every effort" to conduct field citations and he did not. The district court did not reach this question because it believed that Celaya was required to conduct field citations, but we see no reason to remand this issue for resolution. Our review is *de novo*, the parties have fully briefed the issue, and we have already explained why Plaintiffs' evidence does not create a genuine issue of fact as to retaliatory intent. Even assuming that a violation of the General Order's "every effort" provision could support a claim for retaliation, we conclude, for the same reasons that underlie our retaliatory intent analysis, that Plaintiffs have not pointed to evidence from which a reasonable juror could find that, even if Celaya did not make "every effort" to conduct field citations, his failure was motivated by any retaliatory intention.

Finally, Plaintiff Maidhof's claim fails for the independent reason that Celaya complied with the Operational Plan as to her. Unlike the other named plaintiffs, Maidhof had a prior arrest and was part of the group that was immediately transferred to Santa Rita in accordance with the plan. The sole argument of retaliatory intent with respect to Maidhof is that the plan singles out those with arrests from prior protests. This argument, as we have explained, has no merit.

8

Because Celaya has offered a non-retaliatory justification for his decision to conduct booking and citation off-site and Plaintiffs' evidence of retaliatory intent is weak, we conclude that Plaintiffs have not presented sufficient evidence that would permit a reasonable jury to conclude that a desire to chill protected speech was a "but-for" cause of Celaya's conduct. We therefore reverse the decision of the district court on the issue of qualified immunity and remand with instructions to dismiss the claim against Celaya.

**REVERSED and REMANDED.**

*Maidhof v. Celaya*
No. 13-16800

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. In my view, the existence of a material issue of fact regarding the intent of Defendant Chief Celaya precludes entry of summary judgment in favor of the defendant. Motive or intent is a quintessential question of fact that is particularly unsuited for resolution on summary judgment. *See Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1302 (9th Cir. 1999).

Construed in the light most favorable to the Plaintiffs, as required in the qualified immunity context, *see Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006), the facts preclude entry of summary judgment in favor of Celaya. As noted by the majority, on December 7, Celaya was willing to accommodate the protestors. Yet four days later, Celaya initiated mass arrests against the protestors. This abrupt change in procedure is circumstantial evidence of retaliation. *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011); *see also Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008).

In an e-mail dated the same day as the mass arrests, Celaya expressed the following sentiment: "The good news is that the arrested protestors are still at

1

Santa Rita getting booked so they won't be able to participate in the rally. . . ." The majority concludes that, "in context," the e-mail expresses concern "about crowd control" rather than retaliation. However, that interpretation fails to construe the e-mail in the light most favorable to Plaintiffs, as we are required to do. *See Skoog*, 469 F.3d at 1229.

Finally, the Police Department's General Order establishing procedures for arrest provides in pertinent part: "*Every* effort shall be made for field citation and release." (emphasis added). Construed in the light most favorable to Plaintiffs, a material issue of fact remains regarding whether the mass busing of protestors was consistent with "*every* effort" being made "for field citation and release."

In sum, on this record and construing the facts in the light most favorable to the plaintiffs, Celaya was not entitled to qualified immunity as a matter of law. I would affirm the district court.