**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 14 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOY HO SCHERER,<br><br>Plaintiff - Appellee,<br>v.<br><br>WESSSAM WAYNE ISMAIL; NELSON ANTONIO MARTINEZ, Jr.,<br><br>Defendants - Appellants,<br>and<br><br>CITY OF LOS ANGELES, DOES, 1 through 10, inclusive,<br><br>Defendants. | No. 25-2651<br><br>D.C. No.<br>8:22-cv-01931-JVS-ADS<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted April 22, 2026
Pasadena, California

Before: HIGGINSON, NGUYEN, and BRESS, Circuit Judges.**
Dissent by Judge NGUYEN.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Stephen A. Higginson, United States Circuit Judge for the Court of Appeals, 5th Circuit, sitting by designation.

Los Angeles Police Department Officers Nelson Martinez and Wessam Ismail (Defendants) appeal the district court's order denying their motion to dismiss based on qualified immunity in plaintiff Joy Scherer's suit alleging First Amendment retaliation under 42 U.S.C. § 1983. In a prior appeal in this case, we reversed the district court's dismissal of Scherer's complaint for failure to state a claim, noting that, "[o]n remand, the district court may address, in the first instance, whether the officers are entitled to qualified immunity because Scherer failed to allege a violation of a 'clearly established' constitutional right." *Scherer v. City of L.A.*, 2024 WL 4658773, at *1 (9th Cir. Nov. 4, 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). On remand, the district court concluded that the alleged constitutional violation was clearly established. We have jurisdiction to review denials of qualified immunity on an interlocutory basis under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We review the denial of qualified immunity de novo. *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023). We reverse.

Defendants are entitled to qualified immunity under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In the first appeal, we held that, at the Rule 12(b)(6) stage, Scherer had sufficiently pleaded a constitutional violation. *Scherer*, 2024 WL 4658773, at *1. This second

2                                                                                    25-2651

appeal thus concerns only the "clearly established" prong of the qualified immunity analysis. In conducting that inquiry, we are guided by the Supreme Court's instruction that "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 563 U.S. at 741). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In conducting the "clearly established" analysis, the Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* at 63–64 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *Wesby*, 583 U.S. at 63). As we stated in a recent First Amendment retaliation case, the question is "whether the violative nature of the defendants' *particular* conduct is clearly established in light of the *specific context* of the case." *Bird v. Dzurenda*, 131 F.4th 787, 790 (9th Cir. 2025) (citation modified) (quoting

*Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020)).[1]

Scherer cites no case or body of case law clearly establishing a First Amendment violation in a situation like this one, where a police officer is responding to the scene of a domestic assault and advising both parties about their respective rights to press charges, even when advisals about going to jail are plausibly regarded as threats that would chill a person of ordinary firmness from pressing charges. The district court denied qualified immunity based on three principles which the court found were clearly established: (1) reporting a crime to police is protected "petitioning" activity under the First Amendment, (2) threats of retaliation can chill speech, and (3) arrest can chill speech. These principles, however, are articulated at too high a level of generality and thus do not answer "the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63–64 (quoting *Plumhoff*, 572 U.S. at 779).

For example, Scherer relies on *Brodheim v. Cry*, 584 F.3d 1262, 1265–66 (9th Cir. 2009), which involved a prison official who threatened an inmate with

___

[1] The district court interpreted our prior decision in this case to bear on the question of the proper level of generality at which to define the claimed constitutional right. The dissent does the same. Both the district court and the dissent overread our prior decision. In the first appeal, we reversed the dismissal of Scherer's claim because it was based on the incorrect conclusion that Officer Martinez's statement would not have chilled a person of ordinary firmness from pressing charges. We did not analyze qualified immunity and explicitly left that issue open on remand. We did not hold it was clearly established that Officer Martinez's conduct violated Scherer's First Amendment rights.

retaliation for submitting grievances, and *White v. Lee*, 227 F.3d 1214, 1220–25 (9th Cir. 2000), which involved an agency investigation into protestors. These precedents, which do not involve police officers, domestic violence, threatened arrest, or the right to press charges, are too far afield to "'squarely govern[]' the specific facts at issue" in this case. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).

Nor is this "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."[2] *Wesby*, 583 U.S. at 64 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Bravo told the officers that Scherer had been the initial aggressor and had thrown the first blow. Officer Martinez then told Scherer that if Bravo pressed charges, he would have to arrest her. Officer Martinez did not tell Scherer that if *she* pressed charges, he would have to arrest her. And, although Bravo had earlier told Officer Martinez he did not wish to press charges, Officer Martinez could not know if Bravo would change his mind, and so he framed his communications with Scherer in conditional terms. That Scherer plausibly alleged

---

[2] At oral argument, Scherer's counsel argued obviousness for the first time (and conceded that Scherer had not made that argument below or in her briefs). Because this argument was "not advanced in the district court or in the briefs on appeal," it is "deemed waived." *Murphy v. Sloan*, 764 F.3d 1144, 1152 n.9 (9th Cir. 2014); *see also United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief."). Even if it were not waived, it would fail for the reasons we describe.

Officer Martinez's communications could be interpreted as threats does not make the asserted constitutional violation here clearly established.[3]

Under these circumstances, we cannot say that this case involves "exceedingly rare circumstances with extreme facts," such that the obviousness exception would apply. *Waid v. Cnty. of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023). Even if Officer Martinez's actions would have chilled a person of ordinary firmness from pressing charges, it is not clearly established that "the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). And, to the extent Officer Martinez violated California law requiring officers to discourage dominant aggressors in his handling of the situation, "state law violations do not, on their own, give rise to liability under § 1983." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998).[4]

---

[3] The dissent asserts that *Brodheim* and *White* provide an officer with "ample notice" of the alleged constitutional violation. Dissent at 5. But it is not clear whether the dissent is suggesting that the alleged violation is clearly established because it is "squarely govern[ed]" by those cases, *Kisela*, 584 U.S. at 104, or because it is "obvious," *Hardwick v. County of Orange*, 844 8 F.3d 1112, 1117 (9th Cir. 2017). Regardless, the dissent does not explain how such factually dissimilar cases could clearly establish the violation here, or, in the alternative, how Officer Martinez's statements would rise to the level of an obvious constitutional violation.

[4] We recognize that there are valid concerns with Officer Martinez's approach, including his failure to arrest Bravo that night. (Bravo was ultimately arrested and criminally convicted for a violation of Cal. Penal Code § 273.5, domestic violence with corporal injury.) Whether Officer Martinez failed to arrest Bravo promptly,

Although this case is at the motion-to-dismiss stage, qualified immunity should be decided "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). And in this case, there is a videotape of the entire encounter (made available to us in the prior appeal), and the parties do not dispute the material facts. *Cf. Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that courts should "view[] the facts in the light depicted by the videotape"). Therefore, we conclude that dismissal based on qualified immunity is proper at this stage. We reverse and remand for entry of judgment in favor of Defendants.

**REVERSED.**

---

however, is different from whether his statements to Scherer constituted obvious First Amendment retaliation.

*Scherer v. Ismail*, No. 25-2651

NGUYEN, Circuit Judge, dissenting:

The majority today immunizes a police officer who threatened to arrest a domestic violence victim for attempting to press charges against her attacker. We are bound by a prior panel's conclusion that the officer's statement to Plaintiff Joy Ho Scherer constituted a threat that violated her First Amendment right to engage in protected petitioning activity—namely, pressing charges against her attacker. The majority now finds that the right to be free from such a threat was not "clearly established." Because the majority's decision is untethered to the facts and the law, I respectfully dissent.

## I. [1]

On October 31, 2020, Maxwell Bravo brutally beat and attempted to rape Scherer, whom he had been dating. At one point, Bravo broke down the bathroom door behind which Scherer had been hiding, dragged her out by her hair, and beat and attempted to rape her. Scherer tried to fend him off as Bravo ripped her clothes and bit, punched, kicked, and struck her. Bravo eventually threw Scherer and her belongings outside, but then followed her and attempted to drag her back into his apartment by her hair. He then "began beating her head against [a] metal

---

[1] These facts are drawn from the First Amended Complaint and the video from Officer Martinez's body camera.

railing." A bystander yelled at Bravo to stop and said that the police were on their way.

A witness had called the police and reported that a man was beating a woman at Bravo's apartment. Los Angeles Police Department officers responded and, before they entered the apartment complex gate, heard Scherer screaming.

After detaining Bravo, Officer Martinez began questioning Scherer, who "was obviously beaten, bloody, injured and crying." She had visible wounds, including bloody lacerations on her scalp and forehead, bite marks on her shoulders, and bruising on her face and body. Officer Martinez told her that she was "really beat up" and needed an ambulance. Scherer told Officer Martinez that she had refused to have sex with Bravo, that he tried to rape her, and that he "beat her up badly." Bravo had hit her in the face 10 to 15 times.

Officers interviewed Bravo, who had no injuries except for a possible small scratch under his chin. Bravo gave inconsistent statements about his dating relationship with Scherer, denied hitting her, and claimed that she "threw the first blow" and hit him with her "flailing arms." He expressly declined to make a private person's arrest against Scherer and stated that he just wanted to return to his apartment.

Scherer, however, told Officer Martinez that she wanted to press charges against Bravo. Despite knowing that Bravo had already declined to press charges,

Officer Martinez told Scherer that Bravo also had the right to make a private person's arrest, and that, if "he wants to press charges, you will be going to jail too." Scherer, still crying, said that she did not want to go to jail, and Officer Martinez replied that "she would be going to jail right now." At no point did Officer Martinez inform Scherer that Bravo had already declined to press charges. Scherer alleges that this omission was deliberate and designed to dissuade her from exercising her rights. Believing that pressing charges would lead to her own arrest, Scherer chose not to do so. Bravo was eventually charged and criminally convicted of domestic violence with corporal injury.

## II.

The district court properly denied qualified immunity. When reviewing the denial of qualified immunity on a motion to dismiss, we "accept as true all well-pleaded allegations" and "construe them in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012) (simplified).

Here, the nature of Officer Martinez's statement is dispositive. The majority draws inferences in Officer Martinez's favor by characterizing his conduct as merely "advising both parties about their respective rights to press charges." Maj. Dispo. at 4. That characterization cannot be squared with our prior decision, which held that Officer Martinez's statement would have chilled a person of ordinary firmness from exercising the First Amendment right to press charges. *Scherer v.*

3                                                          25-2651

*City of Los Angeles*, 2024 WL 4658773, at *1 (9th Cir. Nov. 4, 2024).  As we explained, the officer's statement was "a threat, not a statement of law, given that Bravo had already told Officer Martinez that he did not want to press charges, and that California law requires officers to discourage the dominant aggressor (in this case, Bravo) from pressing charges, even if he had expressed a wish to do so." *Id.* (citing Cal. Penal Code § 13701(b)).

Although the "constitutional violation" and "clearly established" inquiries are distinct, the majority effectively recasts the interaction—and therefore the violation—as a neutral legal explanation to define the right narrowly and then concludes that no precedent clearly establishes it.

Taking the facts as alleged, Officer Martinez threatened Scherer with arrest for engaging in protected First Amendment activity.  Unlike our prior panel, the majority here resists this conclusion by emphasizing that Officer Martinez spoke in conditional terms and could not know whether Bravo might later change his mind. *See* Maj. Dispo. at 6.  But conditional phrasing does not render a statement non-threatening.  If Bravo later chose to press charges, Officer Martinez could have informed Scherer then.  Scherer plausibly alleged that the officer deliberately omitted the fact that she alone wanted to press charges to deter her from exercising that right.  The district court therefore correctly defined the right at issue as the right to be free from threats of arrest in retaliation for protected petitioning activity.

The question, then, is whether that right was clearly established at the time of the officers' conduct. It was.

Although courts must not define rights at too high a level of generality, neither may they define them so narrowly as to require a case on identical facts. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Ioane v. Hodges*, 939 F.3d 945, 956 (9th Cir. 2019). A right may be clearly established even in novel circumstances, *see Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022), including where the unlawfulness of the conduct is "obvious," *see Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017), or where the "intersection of multiple cases" places the unconstitutionality of the officers' conduct "beyond debate," *see Polanco v. Diaz*, 76 F.4th 918, 930, 930 n.8 (9th Cir. 2023) (simplified). The ultimate question is "whether the state of the law at the time [gave] officials fair warning that their conduct [wa]s unconstitutional." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) (simplified).

Here, existing precedent provided ample notice. We have long held that public officials may not threaten retaliation for engaging in First Amendment activity, including petitioning. *See Capp v. County of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019) (denying qualified immunity to a government official who threatened a parent with loss of custody to deter him from criticizing a government agency); *Brodheim v. Cry*, 584 F.3d 1262, 1270–71 (9th Cir. 2009) (holding that a

prison official's warning to "be careful what you write" could chill grievances in violation of the right to petition, even absent an explicit threat); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (holding that "[i]nformal measures," including "invoking legal sanctions and other means of coercion, persuasion, and intimidation," can violate the First Amendment even if not carried out) (simplified). We have likewise repeatedly recognized that arrest and jailing are paradigmatic forms of unconstitutional retaliation. *See, e.g.*, *Ballentine*, 28 F.4th at 65; *Lacey v. Maricopa County*, 693 F.3d 896, 916–17 (9th Cir. 2012); *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008).

Taken together, these authorities "clearly establish" the unconstitutionality of the officers' conduct. Knowing that Scherer wished to press charges, Officer Martinez "intimated that some form of punishment"—arrest and jailing—would follow if she proceeded. *Brodheim*, 584 F.3d at 1271. Any reasonable officer would understand that threatening a domestic violence victim with arrest for seeking to press charges would chill her right to petition—particularly when our cases have condemned far less coercive forms of retaliatory intimidation.

Because this case involves the straightforward "application of settled law to a new factual permutation[,]" *Eng v. Cooley*, 552 F.3d 1062, 1076 (9th Cir. 2009) (simplified), the district court correctly denied qualified immunity.